Michael E. Shaff
IRVINE VENTURE LAW FIRM, LLP
19900 MacArthur Boulevard, Suite 530
Irvine, California 92612
Telephone (949) 660-6600
Facsimile (949) 660-7799
mshaff@irvinelawpc.com

Attorneys for Plaintiff/counterclaim defendant

Kristopher Dreyer

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| KRISTOPHER DREYER,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant<br><br>UNITED STATES OF AMERICA,<br><br>    Counterclaimant,<br><br>v.<br><br>KRISTOPHER DREYER,<br><br>    Counterclaim Defendant. | **NO. 5:22-cv-01254-PA-KK**<br><br>Plaintiff/Counterclaim-defendant's Post-Trial Brief<br><br>Due Date: October 24, 2023<br><br>Courtroom 9A<br><br>First Street Courthouse<br><br>350 W. 1st Street,<br><br>Los Angeles, CA 90012<br><br>**Hon. Percy Anderson** |

Plaintiff Counterclaim defendant, Kristopher Dreyer, hereby files his Post-Trial Brief.

TABLE OF CONTENTS

TABLE OF AUTHORITIES

PAGE

STATUTE

26 U.S.C §6672 ..……………………………………………………1

REGULATIONS

26 C.F.R. §31.6302-1(h)(2)(iii)(2010)……………………………………7

CASES

*Bloom v. United States*, 272 F.2d 215 (9th Cir. 1959)……………………….5

*Buffalow v. United States*, 109 F.3d 570 (9th Cir. 1997) ……………………4, 5, 6

*Klotz v. United States*, 602 F.2d 920 (9th Cir. 1979)   ………………………5, 6

*Phillips v. Internal Revenue Service*, 73 F.3d 939 (9th Cir.1996) …………..4, 5, 6

*Purcell v. United States*, 1 F.3d 932 (9th Cir. 1993) ………………………..3, 4

*Sorenson v. United States*, 521 F.2d 325 (9th Cir. 1975)  ………………….. 5

*United States v. Leuschner*, 336 F.2d 246 (9th Cir. 1964) …………………..3, 5


POST-TRIAL BRIEF

    I.     INTRODUCTION……………………………………………….1

    II.    STATEMENT OF FACTS……………………………………….1

    III.   ARGUMENT……………………………………………………3

    IV.   CONCLUSION ……………………………………………….7

## I. INTRODUCTION

The sole issue in this case is whether the Plaintiff/Counterclaim Defendant Kristopher Dreyer ("Mr. Dreyer") may properly be held liable for failing to withhold and pay over the trust fund portion of employment taxes withheld from employees under 26 U.S.C. §6672. To be held liable Mr. Dreyer both must have been a responsible person and must have acted willfully. In fact, Mr. Dreyer lacked willfulness. This case involves the fourth quarter of 2017 and the first and second quarters of 2018 (the "Periods in Issue"). The employer that is the focus of this case was Riverside Christian School ("RCS"), a tax-exempt religious school.

## II. STATEMENT OF FACTS

Mr. Dreyer was the chairman of the board of directors of RCS during the Periods in Issue. (Stipulated Facts to be Admitted 6.) During all of the Periods in Issue Michael Nolan acted as the chief financial officer although his services were retained through his company, Intersectional Ministries. During the fourth quarter of 2017 and the first quarter of 2018, Gary Carroll was the business manager, charged with day-to-day management of RCS's bills. (Carroll Decl. 3.)

In January and February, 2018, Gary Carroll, the RCS business manager notified Mr. Dreyer and Mr. Nolan, his replacement, that payments to the IRS tax had been returned for insufficient funds. Mr. Dreyer did tell Mr. Carroll and Mr. Nolan to make the tax payments directly to the IRS. (Carroll Decl. 5-23; Defendant's Exhibit 7, page 7 of 19.) Mr. Carroll notified Mr. Dreyer on February 26, 2018 that the outstanding taxes owed to the IRS were $26,769.94 (Defendant's Exhibit 7, page 10 of 19) leaving Mr. Dreyer to conclude that any previous amounts, he instructed Mr. Carroll and Mr. Nolan to pay, had been paid. Within a few weeks Mr. Dreyer obtained a contribution from an entity known as Song of Songs in the amount of $500,000. (Dreyer Decl. 103.) Mr. Dreyer advised Mr. Nolan that any outstanding bills must be paid. Mr.

Nolan failed to pay the outstanding tax liability although the federal tax liability was significantly less than the $500,000 deposited. (Dreyer Decl. 112-114.)

Mr. Nolan, who was functioning in the role of chief financial officer as of March 18, 2018, testified that RCS's method of reporting finances was to provide Mr. Dreyer a payables report that did not reflect payroll tax liabilities. Any payroll tax liabilities would be shown on the payroll report, a completely different report prepared by a different person. Mr. Dreyer could not have determined that taxes were due from the payables report provided him. "Riverside Christian School and Kari and Gary and Sandra weren't necessarily doing it that way, and they were putting typically all of your vendor pays and things like that on this type of report, and then everything associated with payroll was kept in payroll." (Nolan Depo. 24:13-18; Trial Tr. 44:18-46:6.)

Further the quarterly employment tax returns that were filed for RCS showed that there was no payroll tax liability. Any examination of those filed returns would give the impression that all payroll tax deposits had been made in full for that quarter and that nothing was due with the returns. (Trial Tr. 82:16 - 83:8.)

Finally, it is undisputed that the US Department of Labor conducted an audit of RCS's wage payment practices for the first and second quarters of 2018. The Department of Labor investigation continued from May through September 2018. Both Mr. Dreyer and Ms. Howard-Wade believed that taxes had been satisfied as a result of the Department of Labor examination. (Dreyer Decl. 173-179; Trial Tr. 18:8-16; Howard-Wade Depo. 27:8-29:5.)

The combination of the $500,000 donation, the incomplete financial and payroll reports and the inaccurate employment tax returns negated Mr. Dreyer's knowledge of any outstanding payroll tax liabilities. The results of the Department of Labor only served to confirm the belief that all liabilities associated with wage payments, like payroll taxes, were fully satisfied.

The defendant agrees that the financial information that RCS's board received did not include tax information. (Trial Tr. 35:11-36:11.) Mr. Dreyer had no hand in the compilation of those reports and could only have been aware of the financial information that those reports contained. (Trial Tr. 36:1-11.) As a result, Mr. Dreyer did not know about the continuing federal tax liabilities and his belief that taxes were no longer due was reasonable based on the $500,000 in funds that came in during March, 2018.

### III. ARGUMENT

To impose the trust fund liability penalty under 26 U.S.C. §6672(a), the taxpayer must be both a responsible person and must have been willful. Willfulness is defined "as a *voluntary, conscious and intentional* act to prefer other creditors over the United States..." (*Purcell v. United States*, 1 F.3d 932, 938 (9th Cir. 1993) (emphasis supplied.) The typical trust fund recovery penalty case involves officer-shareholders who consciously favored the company's creditors over the IRS. (See, e.g., *Purcell*, supra, (Purcell knew that taxes had not been paid when he authorized payments to other creditors.) (*Id.* at 938.); *United States v. Leuschner*, 336 F.2d 246, 247 (9th Cir. 1964) (controller had previously caused a different corporation owned by Leuschner to default on employment taxes—as to the previous company Leuschner lacked willfulness because he had no knowledge of the controller's failure to report the defaults in payment of federal payroll taxes to him, but as to the latter company, where Leuschner now had reason to be wary of the controller, Leuschner was willful).)

The conclusion reached from those Ninth Circuit cases is that some measure of willfulness is required. Mere negligence on the part of the allegedly responsible person will not suffice to meet the willfulness requirement of Section 6672. (*Leuschner*, 336 F.2d at 248.)

This is not a case where the CEO/shareholder delegated financial affairs and stepped away for other matters. Mr. Dreyer actually did direct Mr. Nolan and Mr. Carroll to pay the federal employment taxes and they acknowledged having paid all

outstanding bills.  (Dreyer Decl. par. 113-114.)  Mr. Dreyer managed to obtain the necessary funds to do so.  "Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." (*Purcell*, supra, 1 F.3d at 937.)   Mr. Dreyer made the necessary funds available.  It is a mystery as to why the persons charged with generating checks for the payment of RCS's bills did not take care of this most important outstanding payable.

Once he brought in $500,000 in March 2018, as manager of RCS, Mr. Dreyer had done all that he could do.  No one has even implied that Mr. Dreyer directed Mr. Carroll or Mr. Nolan not to pay the taxes. It is also incontrovertible that Mr. Dreyer did not make the day-to-day decisions on which creditors were to be paid and when.  His involvement in connection with the payment of taxes was only to sign the occasional check brought to him for signature.

Mr. Dreyer lacked willfulness, a key element for imposition of the trust fund liability penalty.  Controlling authority in this circuit are *Buffalow v. United States*, 109 F.3d 570 (9th Cir. 1997) and *Phillips v. United States*, 73 F.3d 939 (9th Cir.1996). Under those cases the rule is:

> "We have construed the term 'willfulness' for purposes of failing to pay over withholding taxes as a 'voluntary, conscious and intentional act to prefer other creditors over the United States.' No bad motive need be proved, and conduct motivated by reasonable cause, such as meeting the payroll, may be 'willful'." *Buffalow*, 109 F.3d 570, 573 (9th Cir. 1997).

That factor is missing in this case, at least on Mr. Dreyer's part.  There is no testimony or evidence that he directed anyone to prefer any creditor over the United States—in fact he directed those charged with paying the bills to pay all outstanding bills. Without a 'voluntary, conscious and intentional act to prefer other creditors over

the United States", there is no willfulness under the controlling definition. On the facts of this case, the element of willfulness is missing.

It is worth noting that the taxpayer in *Buffalow* decided to keep his business going after he discovered the unpaid federal tax liabilities.  His plan was to keep the company in operation while he found buyers for his company's assets. Once the assets were sold, the secured debts could be paid, and what was left could be allocated to the tax liabilities. (*Buffalow v. United States*, 109 F.3d 570 (9th Cir. 1997).)

The United States has pushed for a standard of willfulness in this case that borders on strict liability.  In fact, under Ninth Circuit jurisprudence willfulness requires much more.

> "'Willfulness' is defined as a '*voluntary, conscious and intentional act* to prefer other creditors over the United States.' (*Sorenson v. United States* (9th Cir. 1975) 521 F.2d 325, 328; *United States v. Leuschner*, supra, 336 F.2d at 247-48; *Bloom v. United States* (9th Cir. 1959) 272 F.2d 215.) In establishing willfulness, the Government need not prove an intent to defraud or even the existence of a bad motive. (*United States v. Leuschner*, 336 F.2d at 248.) But the Government must prove more than mere negligence." (*Klotz v. United States*, 602 F.2d 920, 923-924 (9th Cir. 1979)(emphasis supplied.).)

The Government has not met that burden in this case.  The Government has cobbled together several facts taken out of context to attempt to show that Mr. Dreyer demonstrated the requisite level of reckless disregard to meet the willfulness standard. Let's break them down.

1. Mr. Dreyer had previously lent RCS funds to meet payroll for the final pay period of the year in 2016 because it was not uncommon for RCS to have cash flow problems around Christmastime.  The existence of a temporary year-end cash flow crisis did not alarm Mr. Dreyer.  He was confident that he would be repaid promptly as he had previously.

2. When Mr. Carroll informed Mr. Dreyer that the final payroll tax deposit for 2017 would be returned, Mr. Dreyer instructed him to pay the deficiency directly. RCS maintained other accounts and RCS routinely transferred funds from other accounts. Mr. Dreyer did not purport to instruct Mr. Carroll on which account or accounts to draw from—only to do so and pay the IRS directly.

3. Mr. Dreyer was advised that there were unpaid payroll taxes in February 2018; by March he was able to deliver funds in an amount that was more than sufficient to pay all federal taxes in full and still cover all RCS's other obligations and told Mr. Nolan to do so. For whatever reason, Mr. Nolan and his assistants failed to make that federal tax payment. At that point, Mr. Dreyer both lacked knowledge of the outstanding federal tax deficiencies and did not meet the level of conduct needed for reckless disregard.

In *Phillips v. United States*, 73 F.3d 939 (9th Cir. 1996), the business owner knew that the operating officer had failed to pay withholding taxes in a previous year and had instructed another controller on the importance of paying other bills over the taxes. (*Id.* at 944.) By contrast there was no suspicious track record and there certainly was no instruction not to pay in this case. Instead, Mr. Dreyer instructed that other funds be used to pay the taxes and on two occasions raised funds that would have been more than sufficient to pay the taxes outstanding. In both cases the taxes were not paid—unbeknownst to Mr. Dreyer.

Mr. Dreyer's conduct never came close to the level of reckless disregard demonstrated in the *Buffalow* and *Phillips* cases. Mr. Carroll and Mr. Nolan were experienced in corporate finance, especially in the operation of exempt institutions. They each had decades of experience in managing the financial affairs of a business or a private school. Mr. Dreyer twice obtained sufficient funds from third party donors to pay all of the taxes and every other payable of RCS. He did not exhibit the disregard for paying taxes, the "let's live dangerously" approach to tax compliance shown in *Buffalow* and *Phillips*. The *Klotz* case holds that willfulness requires more than mere

negligence. Mr. Dreyer's conduct does even meet a negligence standard. He expected the taxes, along with all other outstanding RCS bills, to have been paid out of the $500,000 he raised only a few weeks after he first learned of the late tax payments. Mr. Dreyer did not see the vast majority of checks sent out and RCS had too high a payroll for its employment taxes to have been paid by check. Instead, RCS was required to make its employment tax deposits by the electronic funds tax payment system. (Treas. Reg., 26 C.F.R., §31.6302-1(h)(2)(iii)(2010).) Such payments would never have gone through Mr. Dreyer. Mr. Dreyer did his job, he brought in $500,000 during the first quarter of 2018. He could not have and did not have the requisite knowledge that RCS, for whatever reasons, did not pay its outstanding tax obligations with the funds he brought in.

IV   CONCLUSION

Under Ninth Circuit caselaw, Kristopher Dreyer did not willfully fail to withhold and pay over trust fund taxes for the Periods in Issue and cannot be held liable for RCS's trust fund taxes for the Periods in Issue.

DATE:  October 24, 2023                              IRVINE VENTURE LAW FIRM, LLP

                                                By:       /s/ *Michael E. Shaff*
                                                      Michael E. Shaff
                                                      Attorneys for Plaintiff
                                                      19900 MacArthur Boulevard, Suite 530
                                                      Irvine, CA  92612
                                                      949-660-7700

CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-6.2

The undersigned, counsel of record for Plaintiff Counterclaim defendant Kristopher Dreyer, certifies that this Post-Trial Brief contains 2,514 words, which complies with the word limit of Local Rule 11-6.1

October 24, 2023                              __/s/ *Michael E. Shaff*_____
                                              Michael E. Shaff
                                              Counsel for Plaintiff/Counterclaim-defendant